Girard School District et al., Plaintiffs *v.* John C. Pittenger, as Secretary of Education and Chief Executive Officer of the State Board of Education, et al., Defendants.

Argued December 7, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Reed B. Day,* with him *Robert T. Crothers,* and *Peacock, Keller, Yohe & Day,* for plaintiffs.

*Edward A. Miller,* Deputy Attorney General, for defendants.

*Steven S. Goldberg,* with him *Irene Solet* and *Stephen C. Miller,* for amicus curiae, Parents Union for Public Schools in Philadelphia.

*William Fearen,* with him *Michael I. Levin,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY PRESIDENT JUDGE BOWMAN, March 9, 1977:

Plaintiffs, twenty-nine (29) local school districts and three (3) taxpayers residing in three of those school districts, filed a complaint in equity and a petition for declaratory judgment in this Court alleging that the State Board of Education (State Board) lacks authority to promulgate certain regulations entitled "Students Rights and Responsibilities" and found at 22 Pa. Code §12.1 et seq. Plaintiffs pray that these regulations be declared null and void and that the defendants[1] be enjoined from enforcing them. The defendants had filed preliminary objections, which were

---

[1] The defendants are John C. Pittenger, as Secretary of Education and Chief Executive Officer of the State Board of Education, the State Board of Education and Grace M. Sloan, State Treasurer. Plaintiffs request that the State Treasurer be enjoined from approving expenditures which implement or apply the provisions of the regulations. Auditor General Robert M. Casey was originally named as a defendant but was stricken after his preliminary objections were sustained.

overruled by an equally divided Court but ordered for reargument after close of the pleadings upon either party's motion for summary judgment. The plaintiffs have now so moved and all legal issues are ripe for our disposition.[2]

The challenged regulations purport to establish statewide policies and rules on a number of subjects, including student responsibilities, corporal punishment, procedural requirements for suspensions and expulsions from school, and student rights with respect to freedom of expression (including student publications), hair and dress codes, and searches of student lockers.[3] Plaintiffs contend that the State Board is without authority to promulgate and enforce these regulations inasmuch as the legislature has delegated exclusive authority in the area of student conduct and discipline to local boards of school directors (and their principals and teachers) by Sections 510, 511(a), 1317, 1318 and 1338 of the Public School Code of 1949 (School Code).[4] These sections provide, in pertinent part:

---

[2] As to those of the defendants' preliminary objections which are in the nature of demurrers, our decision here necessarily affirms our previous action in overruling said objections. We do, however, sustain the defendants' objection to the effect that plaintiff taxpayers, as distinguished from plaintiff school districts, lack standing to petition for declaratory relief.

[3] In addition to the provisions of 22 Pa. Code §§12.1-.14, which are clearly intended as binding and enforceable against local school districts, 22 Pa. Code §12.15 contains a number of additional provisions on the same and related subjects, which the State Board deems "Recommended guidelines." Plaintiffs do not directly challenge the authority of the Board to suggest such guidelines but apparently do object to their promulgation in regulation form. Plaintiffs make no allegation with respect to the two remaining sections of Chapter 12, Sections 12.31 and 12.32, and we will not deal with them here.

[4] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§5-510, 5-511(a), 13-1317, 13-1318, 13-1338.

§5-510.

The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs . . . as well as regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school.

§5-511.

(a) The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other activities related to the school program, including raising and disbursing funds for any or all of such purposes and for scholarships, and (2) the organization, management, supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class or school, and may provide for the suspension, dismissal, or other reasonable penalty in the case of any appointee, professional or other employe, or pupil who violates any of such rules or regulations.

§13-1317.

Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, includ-

ing the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them.

§13-1318.

Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board.

§13-1338.

In case any child of compulsory school age cannot be kept in school in compliance with the provisions of this act, on account of incorrigibility, truancy, insubordination, or other bad conduct, of [sic] if the presence of any child attending school is detrimental to the welfare of such school, on account of incorrigibility, truancy, insubordination, or other bad conduct, the board of school directors may, by its superintendent, secretary, or attendance officer, under such rules and regulations as the board may adopt, proceed against said child before the juvenile court, or otherwise, as is now or may hereafter be provided by law for incorrigible, truant, insubordinate, or delinquent children.

Undaunted by this comprehensive and specific grant of authority to local boards, the State Board asserts that it too has authority over student conduct and discipline; authority which is, in fact, superior

because of its role as a "super school board" with statewide policy control and supervisory power over all local boards. Specifically, the State Board cites Sections 1317 through 1320 of The Administrative Code of 1929 (Administrative Code)[5] as authority for these regulations.

Before analyzing these provisions of the Administrative Code, we should note, as did our Supreme Court in a similar case:

> There is a well-recognized distinction in the law of administrative agencies between the authority of a rule adopted by an agency pursuant to what is denominated by the textwriters as *legislative* rule-making power and the authority of a rule adopted pursuant to *interpretive* rule-making power. The former type of rule 'is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the Legislative body.' . . .
>
> An interpretive rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. . . .
> (Emphasis in original.)

*Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 76-77, 313 A.2d 156, 169 (1973).

---

[5] Act of April 9, 1929, P.L. 177, added by Act of June 17, 1963, P.L. 143, *as amended,* 71 P.S. §§367-370. The regulations themselves cite Section 408.1 of the Administrative Code, 71 P.S. §118.1, as authority for their enactment, but this section is organizational in nature and contains no specific grant of regulatory authority. Its only significance for this case lies in the fact that it establishes, as subdivisions of the Board, two councils, the Council of Basic Education and the Council of Higher Education, for the purpose of formulating policy proposals in their respective areas of responsibility.

It is clear in this case that the State Board is claiming *legislative* rule-making power since the regulations in question are in the nature of broad policy declarations and rules which, although purporting to be derived from and to "interpret" statutory as well as decisional law,[6] clearly do not attempt to "track" any particular statute. Moreover, the State Board analogizes its grant of authority to the legislative rule-making power asserted by the Human Relations Commission under the Human Relations Act and upheld in *Uniontown, supra.* Regulations promulgated under such authority are " '. . . valid and . . . [are] as binding upon a court as a statute if . . . [they are] (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' K. C. Davis, 1 Administrative Law Treatise §5.03, at 299 (1958). . . ." *Uniontown, supra,* at 76-77, 313 A.2d at 169. It is the first element of this test upon which plaintiffs base their attack.[7]

The broadest expression of the State Board's power under the Administrative Code is found in Section 1317(a):

> (a) The State Board of Education shall have the power, and its duty shall be, to review the policies, standards, rules and regulations formulated by the Council of Basic Education[8]

---

[6] We must note that to the extent these regulations purport to interpret decisional law, we disagree with the stated interpretation in several cases. To the extent that they directly quote decisional law, they seem superfluous.

[7] Quite apart from the issues of the *authority* of the State Board to issue these regulations, it appears that some of their provisions may be contrary to existing statutory law and as such, are, of course, invalid. *E.g., compare* 22 Pa. Code §§12.6, 12.8 *with* Sections 1318 and 1338 of the School Code, 24 P.S. §§13-1318, 13-1338. However, our decision here renders an evaluation of the specifics of each regulation unnecessary.

[8] *See* supra note 5.

and the Council of Higher Education, and adopt broad policies and principles and establish standards governing the educational program of the Commonwealth. (Footnote added.)

Further, subsection (g) provides specific power to make rules and regulations *within* the scope of the State Board's authority under the Administrative Code:

(g) The State Board of Education shall make all reasonable rules and regulations necessary to carry out the purposes of this act.

In view of these provisions, the crucial issue in this case becomes that of whether the legislature, in granting authority to the State Board to "adopt broad policies and principles and establish standards governing the educational program of the Commonwealth," intended such grant to encompass the area of student conduct and discipline, an area in which it had previously granted specific and extensive authority to local school boards. We conclude that it did not.

While we agree with the State Board that Section 1317(a) of the Administrative Code contains a broad grant of authority, we cannot accept the rather bold assertion that anything done within a public school which, in the State Board's view, advances or impedes education is a matter which concerns the educational program of the Commonwealth. This interpretation would render the term "educational program" all inclusive and would afford the State Board authority over every aspect of the public school system. Such a result was clearly not intended by the legislature as evidenced by the above quoted provisions of the School Code, and many others, which afford to local boards considerable autonomy in the overall operation of the school system of the Commonwealth. Section 1318 of the Administrative Code also strongly suggests a limitation upon the power and authority of the

State Board as something less than the super school board of the State. It provides, in pertinent part:

Educational policies, standards, rules and regulations promulgated by the State Board of Education shall be binding upon the Department of Public Instruction. The department shall submit to the State Board of Education for approval, modification or rejection all rules and regulations proposed by the department *in the areas under the policy control of the State Board of Education.* . .... (Emphasis added.)

Equally unconvincing is the State Board's argument to the effect that a statement of student rights and responsibilities, founded upon basic principles of our society, serves to create discipline of character and helps moral development, both of which are aspects of an ''education.'' While the underlying assertion is perhaps axiomatic, it does not even begin to provide statutory authority for the challenged regulations.

We prefer to look to the Administrative Code itself for guidance as to what the legislature intended in its use of the term ''educational program.'' While no specific definition is provided, a conception of its scope may be gleaned from the provisions of Section 1319 of the Administrative Code, which further defines the role of the State Board and of its relevant subdivision, the Council of Basic Education:

(a) The State Board of Education shall engage in a constant review and appraisal of education in the Commonwealth. The board's evaluation shall take into account such matters as educational objectives, alternative organizational patterns, alternative programs of study, and the operating efficiency of the educational system. The chairman of the State Board of Education shall refer all studies and investiga-

tions to one of its councils as hereinafter provided, and shall receive and place on the board's agenda the findings and recommendations of the councils for appropriate action by the board.

(b)   The Council of Basic Education shall have the power, and its duty shall be to:

(1)   Approve each county plan for the organization of administrative units submitted to the department for approval or prepared by the department.

(2)   Review the annual budget requests for all educational programs other than higher educational programs.

(3)   Investigate programs, conduct research studies and formulate policy proposals in all educational areas not within the purview of higher education including, but not limited to,

(a)   The creation, merger, consolidation and reorganization of school districts, the establishment of joint schools, area technical schools and such other administrative organizations as may be provided by law;

(b)   The operation of small high schools, one-room schools, summer schools, extension education programs and such other special schools as may be provided by law;

(c)   The location, design, safety, health and educational features of public school buildings and equipment;

(d)   The transportation of public school pupils, vehicle characteristics and driver qualifications;

(e)   Admission, attendance, graduation and other separation requirements;

(f)   The education and training of exceptional children;

(g)    The subjects to be taught and the activities to be conducted in elementary, secondary, adult education and other schools; and

(h)    The qualifications for employment of professional personnel in the public schools.

(4)    Encourage and promote such agricultural, industrial, vocational and technical education programs as the needs of the Commonwealth may from time to time require; and

(5)    Investigate and, if deemed appropriate, make recommendations pertaining to the work of any schools of design, schools of industrial arts or industrial schools to which the General Assembly may make an appropriation.

. . . .

While this grant of enumerated powers is clearly not exclusive, we can find nothing therein which even remotely suggests a grant of power or authority to promulgate regulations on student conduct and discipline.[9]    Had the legislature intended to grant such authority to the State Board, it could have easily done so.    Instead, it appears to have delegated that authority exclusively to local school boards under the School Code, a course entirely consistent with educational practices in this country.

No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public

---

[9] We categorically reject the Board's argument that the term "separation" in Section 1319(b)(3)(e) is intended to encompass disciplinary suspensions and expulsions. The term is clearly restricted by the preceding words and can only relate to graduation-type requirements imposed on *students*, not disciplinary procedural requirements to be imposed on school boards. *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1903(B).

schools and to the quality of the educational process.

*Milliken v. Bradley*, 418 U.S. 712, 741-42 (1974).

In view of what we have said, we necessarily reject the State Board's argument that the relevant provisions of the School Code and Administrative Code are in *pari materia* and can be reconciled or, alternatively, if irreconcilable, that the manifest intent of the legislature is that the general provisions of the Administrative Code prevail over the specific provisions of the School Code. *See* Statutory Construction Act of 1972, 1 Pa. C.S. §§1932, 1933. These statutes are neither in *pari materia* nor are they irreconcilable for the simple reason that the School Code grants local boards specific and comprehensive authority over student conduct and discipline and the Administrative Code grants the State Board no authority whatsoever in that area. This lack of authority in the State Board and its location in other administrative bodies is precisely what so easily distinguishes this case from *Uniontown, supra.*

We believe that the State Board has seriously misconstrued both its authority and role under the Administrative Code. It simply is not a "super school board" with general supervisory power over all local boards and over all aspects of the public school system. Rather, its authority is limited to the areas and powers enumerated in the Administrative Code and to that which, by analogy, is clearly within the scope of the "*educational* program" as that term is used therein.

The State Board's apparent fear that students are being denied their rights for "unconstitutional or educationally unsound reasons," whether justified or not, simply cannot provide authority for promulgating these regulations:

> An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it: . . . .

*F.D.I.C. v. Board of Finance & Revenue,* 368 Pa. 463, 472, 84 A.2d 495, 499 (1951).

Moreover, we have never been aware of the need for regulations to protect against violations of the Constitution or other laws of this Commonwealth. Nor will we presume that school board solicitors are any less capable of understanding and interpreting the law than are the members of the State Board and its attorneys, or that local boards are unwilling or unable to comply with that law. Where legal rights are threatened or violated, students and their parents have ready access to the judicial system.

For the foregoing reasons, we hold the regulations entitled "Student Rights and Responsibilities," found at 22 Pa. Code §§12.1-.15, to be invalid for want of statutory authority to support them and are, therefore, unenforceable.

### Order

Now, March 9, 1977, the regulations entitled "Student Rights and Responsibilities," promulgated by the State Board of Education and found at 22 Pa. Code §§12.1-.15 inclusive, are hereby declared to be invalid for want of statutory authority to support them. Defendants are hereby permanently enjoined from enforcing or otherwise implementing the provisions of said regulations.

---

### Dissenting Opinion by Judge Rogers:

I respectfully dissent. The regulations of the State Board of Education which the majority has here struck down wholesale were recommended after study by a

committee of parents, students, teachers and other educators as a comprehensive statement of student rights and responsibilities. They consume no less than 14 pages in the Pennsylvania Code. They do, as the majority points out, include some imperatives with respect to discipline which could be, but are not established on this record to be, contrary to rules on the same subject matter made by local School Boards under powers conferred on them by the Public School Code. Rules of this nature constitute, however, only a portion of the State Board's regulations. The rest consists of statements of the statutory and constitutional law with respect to students' rights, bland but possibly useful statements of student responsibilities, and "recommended guidelines suggesting directions which we think school districts should take as local situations permit." By no means is all of this matter oriented toward permissiveness with respect to student conduct.

My difference with the majority is that I believe we should not, in this lawyer's case, strike down all of the State Board's regulations because a few *may* in real cases prove to have been beyond the power of the State Board of Education to adopt. I would have sustained the defendants' preliminary objections, and I would now enter summary judgment for the defendants, leaving for later decisions the validity of particular regulations as particularly applied.