598 A.2d 1364

**CENTRAL DAUPHIN SCHOOL DISTRICT et al., Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION and Donald M. Carroll, Jr., Secretary of Education of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Nov. 7, 1991.

Reargument Denied Dec. 6, 1991.

Stuart L. Knade, for petitioners.

Gregory R. Neuhauser, Sr. Deputy Atty. Gen., for respondents.

Before COLINS and PALLADINO, JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

In our original jurisdiction under Pa.R.A.P. 1532(b), Petitioners Central Dauphin School District, Hatboro–Horsham

School District, Steelton–Highspire School District and The Pennsylvania School Board Association [1] have filed an application for summary relief, and Respondents Department of Education and Secretary of Education Donald Carroll have filed a cross application for summary relief. Petitioners' and Respondents' applications for summary relief have been triggered by the General Assembly's August 5, 1991 passage of Act 25 of 1991 (Act 25) [2] which added subsections (g) and (h) to section 687 of the Public School Code of 1949, 24 P.S. § 6–687(g)–(h). Each application for summary relief asks this court to declare the respective applicants' own interpretation of Act 25 to be clearly right as a matter of law and, accordingly, to enter a judgment for the respective applicants. For the following reasons, we deny both Petitioners' application and Respondents' application for summary relief.

## I. INTRODUCTION TO ACT 25

Petitioners and Respondents agree that Act 25 requires the board of directors for each covered school district [3] to reopen the school district's previously adopted fiscal year 1991–1992 budget for the purpose of adjusting the budget to reflect (1) increases in state subsidies to school districts pursuant to the General Appropriation Act of 1991 [4] and (2) school district expenditure decreases resulting from lower local employer retirement contribution rates. 24 P.S. § 6–687(g).

**1.** The Pennsylvania School Board Association is a nonprofit Pennsylvania corporation whose purpose is to assist and advise Pennsylvania public school districts about education matters of statewide interest.

**2.** Act of August 5, 1991, P.L. ——, Act No. 91–25, amending various sections of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101 to 27–2702.

**3.** Petitioners Central Dauphin School District, Hatboro–Horsham School District, and Steelton–Highspire School District are encompassed by the provisions of Act 25. *See* 24 P.S. § 6–687(a); *see also Appeal of Neshaminy Auto Villa Ltd.,* 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976) (the remainder of an original statute and an amendment to that statute are construed together as if enacted concurrently).

**4.** Act of August 4, 1991, P.L. ——, Act No. 91–7A.

Petitioners and Respondents differ principally in their interpretation of Act 25 concerning how, under newly added subsections 687(g)(2)–(4), the affected school districts shall, after reopening and adjusting their budgets, alleviate the burden of local property and nuisance taxes which were levied at the time of the school districts' original budget adoptions. Respondents' interpretation of subsections 687(g)(2)–(4) appears in Respondent Secretary of Education's August 16, 1991 letter and enclosures which provide fiscal year 1991–1992 budget reopening instructions (hereinafter August 16 budget reopening instructions) to school districts affected by Act 25. In their application for summary relief, Petitioners challenge Respondents' interpretation of Act 25 as embodied in the August 16 budget reopening instructions, and Petitioners offer their own interpretation of Act 25. In their cross application for summary relief, Respondents reiterate and attempt to bolster their interpretation of Act 25 as expressed in the August 16 budget reopening instructions.

## II. PROCEDURAL HISTORY OF THIS CASE

On August 28, 1991, in the Commonwealth Court of Pennsylvania, Petitioners filed a petition for review, an application for special relief in the nature of a preliminary injunction and an application for summary relief.

On August 30, 1991, an evidentiary hearing on Petitioners' application for special relief was held before Judge Madaline Palladino. By an order issued September 5, 1991, Judge Palladino partially granted Petitioners' application for special relief by preliminarily enjoining Respondents from directing Petitioners to make payments, by October 30, 1991, of abated local property tax and nuisance taxes, or both, which were levied at the time of Petitioners' original budget adoptions. The September 5 order mandated that the preliminary injunction would remain in effect pending argument on and resolution of Petitioners' application for summary relief in this matter. The September 5 order denied Petitioners' application for special relief in all other

respects and reminded Petitioners that, as a result of the partial denial of their application for special relief, Petitioners were not relieved from complying with the paperwork requirements detailed in the August 16 budget reopening instructions.

On September 10, 1991, Petitioners appealed Judge Palladino's September 5 order by filing a jurisdictional statement and a notice of appeal to the Supreme Court of Pennsylvania.

Furthermore, on September 10, 1991, Petitioners applied to the commonwealth court for modification (i.e., expansion) of that portion of Judge Palladino's September 5 order which granted injunctive relief. *See* Pa.R.A.P. 1732. Specifically, Petitioners requested that, pending the Pennsylvania supreme court's disposition of their appeal of Judge Palladino's September 5 order, the commonwealth court preliminarily enjoin Respondents from enforcing any of the August 16 budget reopening instructions including the paperwork requirements. By an order issued September 25, 1991, Judge Palladino denied Petitioners' application for modification on the ground that Petitioners had not satisfied the criteria for obtaining injunctive relief pending appeal. *See Tri–State Asphalt Corp. v. Department of Transportation*, 135 Pa. Commonwealth Ct. 410, 582 A.2d 55 (1990), *petition for allowance of appeal denied*, 527 Pa. 659, 593 A.2d 429 (1991).

On October 7, 1991, a panel of this court heard oral argument on Petitioners' application for summary relief and Respondents' cross application for summary relief. Petitioners' and Respondents' cross applications are now before us for disposition.

## III. RIGHT TO SUMMARY RELIEF

 In ruling on an application for summary relief, we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there are no genuine issues as to any material facts and the right to judgment is clear as a matter of law. Pa.R.A.P. 1532(b);

*Pierce v. Department of Public Welfare,* 84 Pa. Common-
wealth Ct. 602, 480 A.2d 341 (1983); *Gartner v. Pennsylva-
nia Board of Probation and Parole,* 79 Pa. Commonwealth
Ct. 141, 469 A.2d 697 (1983) (application for summary relief
is properly evaluated according to summary judgment stan-
dards); *Peters Township School Authority v. United
States Fidelity and Guaranty Co.,* 78 Pa. Commonwealth
Ct. 365, 467 A.2d 904 (1983) (summary judgment standards).

In the present case, neither Petitioners nor Respondents
contend that there exist any disputed material facts. Con-
sequently, the sole issue for our resolution is whether either
Petitioners or Respondents are clearly entitled, as a matter
of law, to a declaration that their respective interpretation
of Act 25 is correct and, concomitantly, to the entry of a
judgment in their favor.

## A. *Validity of Respondents' Audit Procedures*

■ Initially, Petitioners assert that their particular in-
terpretation of Act 25 must necessarily prevail because
Respondents' interpretation of Act 25 was allegedly articu-
lated through improperly promulgated regulations (i.e., the
August 16 budget reopening instructions) and is, for that
reason, purportedly invalid under the Commonwealth Attor-
neys Act,[5] the Regulatory Review Act,[6] and what is popular-
ly known as the Commonwealth Documents Law.[7] In an-
swer to Petitioners' assertion, Respondents argue that the
August 16 budget reopening instructions do not comprise
regulations because they were merely a response to the
legislative directive in subsection 687(g)(6) of Act 25 that
Respondent Department of Education "establish the admin-
istrative procedures necessary to audit school district com-

5. Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101 to
 732–506.

6. Act of June 25, 1982, P.L. 633, reenacted and amended by Act of
 June 30, 1989, P.L. 73, *as amended,* 71 P.S. §§ 745.1–.15.

7. Provisions of the Commonwealth Documents Law are found at Act
 of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1101–1208, and at 45
 Pa.C.S. §§ 501–907.

pliance with the provisions of [section 687 as amended by Act 25]." 24 P.S. § 6–687(g)(6).

Respondents maintain that, in subsection 687(g)(6) of Act 25, the General Assembly did not direct Respondents to promulgate regulations but, instead, expressly directed Respondents to establish administrative procedures because the General Assembly recognized that Respondents could not satisfy the notice, comment period, and hearing requirements for the promulgation of regulations to audit school district compliance with Act 25 and still adhere to Act 25's tight time frame: August 31, 1991 deadline for school districts to reopen their budgets for fiscal year 1991–1992; September 16, 1991 deadline for school districts to submit revised budget information to Respondent Department of Education, and October 30, 1991 deadline for school districts to alleviate the burden of local taxes. *See* timetable expressed in 24 P.S. § 6–687(g)(1)–(2) and (h).

We fail to comprehend how Petitioners' assertion substantiates Petitioners' claim of a clear entitlement to summary relief. Even if the August 16 budget reopening instructions were deemed improperly promulgated regulations, we would not be compelled to accept as correct the interpretation of Act 25 advanced by Petitioners. Similarly, even if the August 16 budget reopening instructions were not deemed regulations, we would not be compelled to accept as correct the interpretation of Act 25 advanced by Respondents. We must evaluate the propriety of Petitioners' interpretation of Act 25 and the propriety of Respondents' interpretation of Act 25 according to the well-settled rules of statutory construction. *E.g.,* the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991; *Appeal of Neshaminy Auto Villa Ltd.*

### B. Interpretation of Act 25

█ Next, Petitioners and Respondents each contend that their own interpretation of Act 25 must clearly be upheld as a matter of law because their particular interpretation of

Act 25 allegedly conforms to the language and the legislative intent expressed in Act 25.

### 1. Provisions of Act 25 Being Construed

Petitioners and Respondents offer divergent interpretations of three key provisions of Act 25 which are enumerated under the headings subsection 687(g)(2), subsection 687(g)(3), and subsection 687(g)(4). In their entirety, the three subsections state:

[Subsection 687(g) ](2) In those districts which levy taxes and where the additional State revenues provided by the General Assembly and the local savings as a result of a decrease in employer retirement contribution rates exceed the State revenue figures and local revenues utilized by the school district at the time of adoption of its original fiscal year 1991–1992 budget, the district shall use these additional State funds to abate local property tax or nuisance taxes, or both, which were levied at the time of original budget adoption within sixty (60) days of the reopening of the district's budget.

[Subsection 687(g) ](3) Those districts which levy taxes and in which the additional State revenues generated as a result of passage of the 'General Appropriation Act of 1991,' when compared to State revenue figures utilized in their originally adopted budget, exceed the budgeted figures by an amount insufficient to cost-effectively prepare and mail adjusted tax notices shall apply to the Department of Education for a waiver of this tax rebate provision.

[Subsection 687(g) ](4) Under no circumstances shall any of these additional State revenues be used to increase a district's existing fund balance or for deposit into any district reserve accounts but shall be specifically utilized to meet fiscal year 1991–1992 program needs and to reduce local tax levies.

### 2. Parties' Diverse Explanations of Act 25

Petitioners and Respondents propound well-reasoned, but irreconcilably incompatible, interpretations of the tax relief

provisions of Act 25. Petitioners and Respondents construe differently those portions of Act 25 which concern the total moneys available for local taxpayer relief under Act 25, the permitted use of moneys available under Act 25, the effect of low expenditure supplements under Act 25, and the need for either an abatement or a rebate of taxes under Act 25.

*Total Moneys Available under Act 25:*

Petitioners and Respondents disagree about the amount of moneys which are subject to Act 25's taxpayer relief measures. Their disagreement stems from their diverse definitions of the subsection 687(g)(2) phrase "additional State funds."

Petitioners interpret the phrase "additional State funds" to mean solely "additional State revenues." Petitioners argue that the August 16 budget reopening instructions improperly require school districts to use the entire amount of both "additional State revenues" and local employer retirement contribution savings to abate local taxes whereas subsection 687(g)(2) purportedly distinguishes "additional State revenues" from local employer retirement contribution savings and directs that only additional state revenues be used to abate local taxes.

Moreover, Petitioners maintain that their interpretation of the phrase "additional State funds" is consistent with the language in other provisions of Act 25, i.e., subsections 687(g)(3) and 687(g)(4). Petitioners allege that, like subsection 687(g)(2), subsections 687(g)(3) and 687(g)(4) differentiate "additional State revenues" from local employer retirement contribution savings because subsections 687(g)(3) and 687(g)(4) refer solely to "additional State revenues" and do not mention local employer retirement contribution savings.

Petitioners note that subsection 687(g)(3) permits school districts to apply for a waiver of the tax rebate component of Act 25 when the originally anticipated state revenues are exceeded by the "additional State revenues" available under the General Appropriation Act of 1991. Petitioners stress that subsection 687(g)(3) does not contain any indication

that local employer retirement contribution savings are to be regarded as "additional State funds" that a school district must consider in determining its eligibility for a tax rebate waiver. Similarly, Petitioners observe that, although subsection 687(g)(4) prohibits a school district from augmenting its existing fund balance or reserve accounts by using "additional State revenues," subsection 687(g)(4) does not contain any indication that a school district is prohibited from using local employer retirement contribution savings for such augmentation purposes.

As evidenced by the August 16 budget reopening instructions, Respondents interpret the phrase "additional State funds" to require school districts to utilize the aggregate amount of both "additional State revenues" and local employer retirement contribution savings to relieve the burden of local taxes. Respondents state that their interpretation of subsection 687(g)(2) is compelled by the wording and structure of subsection 687(g)(2). Respondents emphasize that subsection 687(g)(2) is one long sentence whose first half identifies two sources of "additional State funds," namely, "additional State revenues" and "local savings as a result of a decrease in employer retirement contribution rates" and whose second half directs a school district to "use these additional State funds to abate local property tax or nuisance taxes, or both...." Respondents claim that the phrase "these additional State funds" in the second half of the sentence of subsection 687(g)(2) logically refers to both antecedents in the first half of the sentence of subsection 687(g)(2), i.e., "additional State revenues" and "local savings as a result of a decrease in employer retirement contribution rates."

Furthermore, Respondents argue that their interpretation of the phrase "additional State funds" is consonant with the language in another provision of Act 25, i.e., subsection 687(g)(1). Respondents note that subsection 687(g)(1) defines "increased allocations ... provided by the General Assembly" to include "subsidy payments on account of instruction; small district assistance payment; payments on

account of transportation of nonpublic school pupils; State reimbursement for health services; and local savings accruing as a result of decreases in employer retirement contribution rates." Equating the subsection 687(g)(1) phrase "increased allocations ... provided by the General Assembly" with the subsection 687(g)(2) phrase "additional State funds," Respondents assert that, inasmuch as local employer retirement contribution savings are included as "increased allocations" in subsection 687(g)(1), local employer retirement contribution savings should be included as "additional State funds" in subsection 687(g)(2).

*Permitted Use of Monies under Act 25:*

Petitioners and Respondents disparately construe Act 25's provisions concerning the utilization of "additional State revenues" and local employer retirement contribution savings to finance local programs rather than to alleviate the burden of local property and nuisance taxes. Their discrepant interpretations derive from their respective understandings of the interrelationship between subsection 687(g)(4) and subsections 687(g)(2) and 687(g)(3).

Subsection 687(g)(4) states that "additional State revenues" shall not be used to increase a school district's "existing fund balance" and shall not be deposited into a school district's reserve accounts "but shall be specifically utilized to meet fiscal year 1991–1992 program needs and to reduce local tax levies."

Petitioners contend that the August 16 budget reopening instructions improperly forbid a school district from applying "additional State revenues" to satisfy its fiscal year 1991–1992 program needs unless the school district has previously obtained a tax rebate waiver from Respondent Department of Education. Relying on the absence of any waiver reference in subsection 687(g)(4), Petitioners opine that subsection 687(g)(4) permits a school district to use "additional State revenues" for its fiscal year 1991–1992 program needs without having to request a tax rebate waiver. *See, e.g., Corley v. Pennsylvania Board of Probation and Parole,* 83 Pa. Commonwealth Ct. 529, 478 A.2d

146 (1984) (rule of statutory construction regarding inclusion of language in one part of a statute and omission of corresponding language in another part of the statute). Petitioners also argue that Respondents' understanding of subsection 687(g)(4) allegedly renders superfluous the subsection 687(g)(4) phrase "to reduce local tax levies" because a school district that has already received a tax rebate waiver would not need to use "additional State revenues" for tax abatement. *See* 1 Pa. C.S. § 1922(2) (General Assembly intends entire statute to be effective).

Respondents assert that Petitioners' interpretation of subsection 687(g)(4) fails to read subsections 687(g)(2), 687(g)(3), and 687(g)(4) as integrated parts of one, larger context, i.e., Act 25. *See, e.g., Keitt v. Ross,* 17 Pa. Commonwealth Ct. 183, 331 A.2d 582 (1975). Concomitantly, Respondents claim that Petitioners' interpretation of subsection 687(g)(4) overlooks the existence of the word "shall" in all three subsections and that the word "shall" must be viewed as imperative and not merely permissive in all three subsections. *See, e.g., Girard School District v. Pittenger,* 29 Pa. Commonwealth Ct. 176, 370 A.2d 420 (1977), *rev'd on other grounds,* 481 Pa. 91, 392 A.2d 261 (1978) ("shall" generally is mandatory and not directive). Respondents maintain that their own interpretation of subsection 687(g)(4) is consonant with the wording and meaning of subsections 687(g)(2) and 687(g)(3).

Respondents contend that, unless a school district has received a subsection 687(g)(3) tax rebate waiver, subsection 687(g)(2) requires the school district to relieve the local tax burden by the full amount that the "additional State funds"[8] accessible to the school district under the General Appropriation Act of 1991 exceed the revenue figures appearing in the district's originally adopted budget. Similar-

**8.** Based upon their understanding of subsections 687(g)(1) and 687(g)(2), Respondents continue to assert that "additional State funds" in the form of both "additional State revenues" and local employer retirement contribution savings are subject to the tax relief measures of Act 25. See the discussion of the subsection 687(g)(2) phrase "additional State funds," *supra.*

ly, Respondents argue that subsection 687(g)(4) requires a school district to use the excess "additional State funds" available to it under the General Appropriation Act of 1991 to "reduce local tax levies" unless the school district has received a subsection 687(g)(3) tax rebate waiver.

According to Respondents' understanding of subsection 687(g)(3), when "additional State funds" available to a school district under the General Appropriation Act of 1991 do not exceed the revenue figures in the district's originally adopted budget by an amount sufficient for the district to make a cost-effective tax rebate, the district may choose to request a tax rebate waiver from Respondent Department of Education.[9] Respondents opine that the portion of subsection 687(g)(4) pertaining to program needs becomes applicable only after a school district has received a tax rebate waiver from Respondent Department of Education pursuant to subsection 687(g)(3). Respondents aver that, after a school district has received a tax rebate waiver and is thereby excused from having to "reduce local tax levies," the district must then follow the alleged directive of subsection 687(g)(4) to use the excess "additional State funds" available to it under the General Appropriation Act of 1991 for its "fiscal year 1991–1992 program needs" rather than for other objectives.

*Effect of Low Expenditure Supplements under Act 25:*

Petitioners and Respondents proffer diverse interpretations of the impact of Act 25's low expenditure supplement provisions upon the total moneys subject to Act 25's tax relief measures. Petitioners and Respondents perceive differently how subsection 687(g)(2) is affected by the low expenditure supplement provisions of Act 25 enumerated under the headings subsection 2502.17 and subsection 2502.-

9. In particular, Respondents argue that a school district may apply for a waiver pursuant to subsection 687(g)(3) when the excess "additional State funds" under the General Appropriation Act of 1991 are not enough to permit a cost-effective preparation and mailing of adjusted tax notices showing a tax rebate by the school district.

18.[10]

In pertinent part, subsection 2502.17 gives a "low expenditure, low wealth supplement" of 1.3 percent of a school district's actual instruction expenditure for the reimbursable year to a school district with a market value/income aid ratio of 0.6000, or greater, and "an actual instruction expenditure per weighted average daily membership for the school year prior to the reimbursable year, which is less than the Statewide median actual instruction expenditure per weighted average daily membership for that year...."
In pertinent part, subsection 2502.18 gives a "low expenditure poverty supplement" of 0.5 percent of a school district's actual instruction expenditure to a school district with "an actual instruction expenditure per weighted average daily membership for the school year prior to the reimbursable year, which is less than three thousand four hundred forty-five dollars ($3445), and has ten percent (10%) or more of its pupils in average daily membership as children in low-income families."

Petitioners assert that the August 16 budget reopening instructions impermissibly insert the word "all" into subsection 687(g)(2) and construe subsection 687(g)(2) to mandate that all excess "additional State revenues" be fully utilized to relieve the burden of local taxes. Petitioners contend that such an interpretation of subsection 687(g)(2) frustrates the legislative intent of subsections 2502.17 and 2502.18.

Petitioners opine that subsection 687(g)(2) must be read together with subsections 2502.17 and 2502.18 so that the legislative intent manifest in subsections 2502.17 and 2502.18 can be fulfilled. Petitioners argue that if a school district were compelled to abate local taxes by the entire amount of excess "additional State revenues," i.e., by an amount which included the two low expenditure supplements, the remedial purpose of subsections 2502.17 and 2502.18 would be defeated because the school district would

10. Act 25 amends the Public School Code of 1949 by adding subsections 2502.17 and 2502.18, 24 P.S. §§ 25–2502.17–.18.

allegedly be deprived of the benefit of the two supplements by being forced to transfer the supplement amounts to local taxpayers in the form of tax relief.

Respondents contend that, under subsection 687(g)(2), all "additional State funds"[11] must be used to alleviate the burden of local taxes. Respondents emphasize that subsection 687(g)(2) states that a school district "shall" use the excess "additional State funds" available to it under the General Appropriation Act of 1991 to abate local property or nuisance taxes. As explained *supra*, Respondents construe the word "shall" in subsection 687(g)(2) to be mandatory and not permissive. *See, e.g., Girard School District.* Respondents argue that, if the General Assembly had intended to endow school districts with the discretion to decide whether or not to abate local property and nuisance taxes by any or all of the excess "additional State funds," the General Assembly would have employed the word "may" instead of the word "shall" in subsection 687(g)(2).

Respondents stress that their interpretation of subsection 687(g)(2) is consistent with the purpose of subsections 2502.17 and 2502.18 because a school district will allegedly not suffer an economic loss if the school district alleviates the local tax burden only by the amount that the "additional State funds" available to the school district under the General Appropriation Act of 1991 exceed the revenues anticipated by the school district at the time of its original budget adoption.

Furthermore, Respondents note that, although the General Assembly did not specifically exempt subsection 2502.17 and subsection 2502.18 revenues from the tax relief formula of subsection 687(g)(2), the General Assembly did provide an explicit mechanism by which a school district may ask to be relieved of the requirement of alleviating the local tax burden. Respondents argue that the waiver provision of subsection 687(g)(3) would be rendered mere surplusage if subsection 687(g)(2) were construed to permit school districts to use their unfettered discretion in determining

11. See footnote 8, *supra.*

whether any or all excess "additional State funds" would be utilized to relieve the burden of local property or nuisance taxes. *See* 1 Pa. C.S. § 1922(2).

*Abatement or Rebate of Taxes under Act 25:*

Petitioners and Respondents dispute whether Act 25 necessitates a tax abatement (i.e., a reduction of tax assessments) or a tax rebate (i.e., a refund or return of moneys to taxpayers). Their dispute is premised upon the Petitioners' and Respondents' varying interpretations of Act 25's provisions delineated under the headings subsection 687(g)(2), subsection 687(g)(3), subsection 687(g)(4), and subsection 687(g)(5).

Petitioners assert that the August 16 budget reopening instructions contain a tax "rebate" deadline which does not appear in subsection 687(g)(2). Instead, Petitioners contend that the deadline established in subsection 687(g)(2) is strictly the time limit by which a school district must "abate" local taxes. Quoting Black's Law Dictionary (5th ed. 1979) and Webster's New Collegiate Dictionary (1979), Petitioners aver that a tax abatement signifies a tax reduction but does not necessarily entail a tax rebate. *See, e.g.,* 1 Pa.C.S. § 1903 (words in a statute are construed according to their standard usage). Moreover, Petitioners assert that Act 25 does not contemplate, in any way or at any time, a tax rebate to local taxpayers.

Petitioners allege that their interpretation of Act 25 is consonant with the language in subsections 687(g)(2), 687(g)(4) and 687(g)(5). Subsection 687(g)(2) directs school districts to "use these [excess] additional State funds [available under the General Appropriation Act of 1991] to abate local property tax or nuisance taxes, or both...." Subsection 687(g)(4) specifies that a school district shall use the "additional State revenues" available to it under the General Appropriation Act of 1991 "to reduce local tax levies." Subsection 687(g)(5) states that, if a school district mails adjusted tax notices after it reopens its fiscal year 1991–1992 budget, the district shall state in the adjusted tax

notices that the General Appropriation Act of 1991 has resulted in "decreased school district tax assessments."

At the October 7, 1991 appellate oral argument on the parties' applications for summary relief, Respondents conceded that the August 16 budget reopening instructions mistakenly construed subsection 687(g)(2) to require school districts to rebate, rather than abate, local taxes by the deadline expressed in subsection 687(g)(2). Respondents agreed at oral argument that the deadline in subsection 687(g)(2) must be interpreted solely as a tax abatement (reduction) time limit because school districts would otherwise be forced to rebate (return or refund) to taxpayers moneys that the school districts had not yet received from the state in the form of either "additional State revenues" or "additional State funds" which, under the General Appropriation Act of 1991, would be given to the school districts in increments throughout fiscal year 1991–1992 and not in a lump sum at the start of fiscal year 1991–1992.

Nevertheless, Respondents have not abandoned their position regarding Act 25's purported requirement of an eventual tax rebate. Respondents stress that subsection 687(g)(3) requires a school district to "apply to the Department of Education for a waiver of this tax rebate provision" when the "additional State funds" [12] available under the General Appropriation Act of 1991 do not exceed the state revenue figures anticipated at the time of the school district's originally adopted budget by an amount that will enable a cost-effective preparation and mailing of adjusted tax notices. Respondents interpret the subsection 687(g)(3) phrase "this tax rebate provision" to refer to the overall tax relief plan embodied in Act 25. Relying upon the wording of subsection 687(g)(3), Respondents maintain that the General Assembly intended that a school district formulate a tax abatement (reduction) plan by the deadline appearing in subsection 687(g)(2) but thereafter rebate moneys to local taxpayers as "additional State funds" become accessible to

12. See footnote 8, *supra.*

the school district in conformity with the General Appropriation Act of 1991.

### C. Conclusion

Because the interpretation of Act 25's provisions is a matter of first impression for Pennsylvania's judiciary [13] and because Petitioners and Respondents have both advanced plausible explanations of Act 25's provisions, we conclude that neither Petitioners nor Respondents have shown a clear entitlement to summary relief as a matter of law and that their applications for summary relief must therefore be denied.

As a result of our denial of summary relief, Petitioners and Respondents may proceed to argue their particular views of Act 25 when we rule upon Petitioners' pending petition for review which requests a declaratory judgment to elucidate the meaning of Act 25's provisions.

Finally, given Respondents' October 7, 1991 oral argument concession concerning the tax abatement deadline in subsection 687(g)(2), we note that our September 5, 1991 order preliminarily enjoining Respondents from directing Petitioners to make payments, by October 30, 1991, of abated local property tax and nuisance taxes, or both, has become moot.

Accordingly, we deny Petitioners' application for summary relief and Respondents' application for summary relief.

### ORDER

AND NOW, November 7, 1991, the application of Petitioners Central Dauphin School District, Hatboro–Horsham School District, Steelton–Highspire School District and The Pennsylvania School Board Association for summary relief

13. *See, e.g.,* 1 Pa.C.S. § 1922(4) (effect of interpretation of a statute by a court of last resort); *Babcock & Wilcox Co. v. Workmen's Compensation Appeal Board,* 63 Pa. Commonwealth Ct. 61, 437 A.2d 778 (1981) (a court's interpretation of a statute constitutes a declaration of the law passed by the General Assembly).

in the above-captioned case and the application of Respondents Department of Education and Secretary of Education Donald M. Carroll, Jr., for summary relief in the above-captioned case are hereby denied. As a result of Respondents' October 7, 1991 oral argument concession concerning the tax abatement deadline in newly added subsection 687(g)(2) of the Public School Code of 1949, our September 5, 1991 order preliminarily enjoining Respondents from compelling Petitioners to make payments, by October 30, 1991, of abated local property tax and nuisance taxes, or both, has become moot.